IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

YULONDA ROBINSON,

        Plaintiff,

3:12-cv-00127-PK

OPINION AND ORDER

v.

JONES LANG LASALLE AMERICAS, Inc.
an Illinois Corporation,

        Defendant.

PAPAK, Judge:

       Plaintiff Yolanda Robinson brings this employment discrimination action against defendant Jones Lang LaSalle Americas, Inc. ("Jones Lang"), with whom she is still currently employed. Robinson alleges claims for race discrimination under 42 U.S.C. § 1981, and Or. Rev. Stat. § 659A.030, and retaliation under Title VII and Or. Rev. Stat. § 659A.030(1)(f). Now before the court is Robinson's motion for a protective order (#9) barring defendant from subpoenaing any records related to her medical history. For the reasons stated below, Robinson's motion is granted in part and denied in part.

//

OPINION AND ORDER- Page 1

## BACKGROUND

Robinson is a mail room clerk at the Xerox Corporation facility in Portland, Oregon and the only African-American employee at that facility. (First Amend. Compl., #3, ¶¶6-7.) Robinson alleges that she was subjected to disparate treatment at work based on her race, including criticism of her dress and hair color, unequal enforcement of company rules, and other discipline. *Id.* at ¶7. In the summer of 2010, Robinson raised concerns about her discriminatory treatment to Human Resources, after which defendant's discriminatory treatment allegedly intensified. *Id.* at ¶¶8-9. In April 2011, plaintiff took family leave for a medical procedure. *Id.* at ¶10. During Robinson's leave, her supervisor contacted her to complain about her failure to notify the supervisor of her time off and pressured her to return earlier than recommended by her physician. *Id.* After Robinson returning to work in May 2011, her supervisor reprimanded her and required her to report her breaks via email, which was not required of coworkers. *Id.* at ¶11.

In June 2011, Robinson's supervisor reprimanded Robinson for failing to report a Canadian mail strike to her first before telling other employees. *Id.* at ¶13. Robinson complained to Human Resources about both incidents and also called the company ethics hotline. *Id.* at ¶¶12, 14. In late June 2011, Robinson "was forced to take off" six weeks due to "work-related stress," for which she claims damages for lost wages and income. *Id.* at ¶16. Robinson again complained to Human Resources, and defendant conducted an investigation. *Id.* at ¶18. Nevertheless, defendant continued to discriminate against plaintiff. *Id.* Robinson seeks emotional distress damages in an as-yet undetermined amount as well as lost wages and benefits for her stress-induced leave. *Id.* at ¶¶16,19,20.

In late April and early May 2012, defendant served notices of intent to subpoenas on Dr.

OPINION AND ORDER- Page 2

Bruce Webber, MD, and Dr. Kara Kassay, MD, PC, the two physicians who wrote notes excusing Robinson from work for the two leaves she described in her complaint. (Falcone Decl., #14, Exs. 2,3,4.) The subpoenas sought all of Robinson's medical records, with no time limitations. (Creighton Decl., #11, Ex. 1.) Instead of moving to quash the subpoenas, as the parties agreed would be the appropriate procedure to obtain relief from their effect, plaintiff's counsel objected to them by letter. After defendant responded to plaintiff indicating she would need to move to quash, plaintiff's counsel then filed the present motion for a protective order, without first conferring with defendant's counsel. Plaintiff's counsel later conferred with defendant's counsel, and reported that Robinson was taking an additional leave of absence due to work-related stress. (Falcone Decl., #14, ¶10.) At oral argument, Robinson's counsel represented that Robinson remains on leave, perhaps indefinitely, and that Robinson may amend her complaint to allege constructive discharge.

## LEGAL STANDARDS

A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). The party resisting discovery or seeking limitations may show "good cause" by demonstrating harm or prejudice that will result from the discovery. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-1211 (9th Cir. 2002).

## DISCUSSION

Robinson moves for a protective order completely prohibiting Jones Lang from subpoenaing her medical records. She argues that she does not waive the well-established privacy right to medical records because she alleges only so-called "garden variety" emotional

OPINION AND ORDER- Page 3

distress damages. She also contends that defendant's subpoenas are overly broad and would lead to discovery of irrelevant medical information concerning treatment of conditions unrelated to this case, for time periods well before her employment with defendant began in July 2008.

Jones Lang has expressed its willingness to limit the time-frame of the subpoenas somewhat and stipulate to a protective order preventing Robinson's co-workers from accessing her medical records. However, Jones Lang argues that Robinson's motion should be otherwise denied for several reasons. As a threshold matter, defendant notes Robinson failed to confer as required by Local Rule 7-1.[1] On the merits, defendant argues that Robinson waived any privacy right or other potentially applicable privilege protecting her medical records because she placed her medical condition at issue in two different, although interrelated, respects. First, defendant contends that Robinson's emotional distress damages are not "garden variety" both because her allegations of work-related stress necessitating extended leaves of absences go far beyond the ordinary response to the discrimination she purportedly experienced, and because her emotional distress allegations form the "crux" of her damages claims. Second, defendant argues that Robinson's allegations seeking lost wages and income for stress-induced, doctor-recommended absences caused by defendant's conduct place her medical condition and her doctor's recommendations at issue and waives any privacy rights to those records.[2]

---

[1] The court declines to deny plaintiff's motion on this ground. *See* Local Rule 7-1(a)(2)("The Court *may* deny any motion that fails to meet [the LR 7-1] certification requirement.") (emphasis added).

[2] Defendant also seems to suggest, somewhat obliquely through its citation to *Kubie v. Target Corp*, 2009 WL 5216943 (D. Colo. Dec. 30, 2009), that because Robinson sought a medical leave of absence in April 2011 unrelated to stress and because she alleges defendant reprimanded her for taking that leave, her medical records should be made available to show that the leave was not medically justified. Defendant, however, does not further pursue that position

OPINION AND ORDER- Page 4

Here, Robinson asserts only the constitutional right to privacy, rather than the psychotherapist-patient privilege, to protect her medical records from discovery.[3] The particular protection asserted makes some difference to the legal analysis, but does not change the end result.

Courts in this circuit recognize that a plaintiff waives the right to privacy of medical records by asserting more than a garden variety claim of emotional distress. *E.E.O.C. v. Serramonte*, 237 F.R.D. 220, 224 (N.D. Cal. 2006) (citing *Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D.Cal.1995)). Defendant notes that other courts define the waiver standard more broadly, holding that waiver of privacy protection occurs when "a plaintiff raises before the court issues concerning her mental and emotional condition and seeks damages for mental and emotional injuries." *Enwere v. Terman Assocs., L.P.*, 2008 WL 5146617, at *2 (N.D. Cal. Dec. 4, 2008) (citing *Caesar v. Mountanos*, 542 F.2d 1064, 1066-70 (9th Cir. 1976)).

Concerning the psychotherapist-patient privilege, it is not yet settled in this Circuit the extent to which a plaintiff's claim of emotional distress damages constitutes a waiver of the plaintiff's psychotherapist-patient privilege. *Fitzgerald v. Cassil*, 216 F.R.D. 632, 636 (N.D. Cal.

---

either in briefing or at oral argument.

[3] Defendant responds with arguments addressing both the right to privacy and the psychotherapist-patient privilege. Relevant authority suggests both doctrines may apply to medical records from a non-psychotherapist which nonetheless concern mental conditions. *Fitzgerald v. Cassil*, 216 F.R.D. 632, 634 (N.D. Cal. 2003) ("[t]o the extent any medical records involve mental health (including physical conditions tied to mental health), they are considered psychological records for purposes of this motion [to quash a subpoena]."); *but see Serramonte*, 237 F.R.D. at 223-225 (analyzing protection of medical records only under the constitutional right to privacy); *Thomas v. UPS Ground Freight, Inc.*, No. CV-06-1281-ST, 2007 U.S. Dist. LEXIS 97437, at *7-9 (D. Or. Feb. 15, 2007) (same).

2003). Courts have variously endorsed three different approaches: (1) the broad approach, where a plaintiff waives the privilege simply by alleging emotional distress in a complaint; (2) the middle ground approach, where a plaintiff waives the privilege by alleging more than "garden variety" emotional distress, either by alleging a separate tort for distress or alleging unusually severe emotional distress; and (3) the narrow approach, where a plaintiff waives the privilege only by affirmatively relying on the psychotherapist-patient communication. *Fitzgerald*, 216 F.R.D at 636-638. In a previous opinion on this issue, this court endorsed a hybrid of the middle ground and narrow approach that examines both whether the plaintiff intends to rely on the psychotherapist-patient communication and the severity of emotional distress alleged. *Arjangrad v. JPMorgan Chase Bank, N.A.*, No. 3:10-cv-01157-PK (Oct. 19, 2011), at 16.

Here, Robinson's allegations indicate that she has waived protections afforded by the constitutional right to privacy and the psychotherapist-patient privilege. First, concerning the right to privacy, Robinson places her mental condition at issue by alleging that defendant's discriminatory conduct caused her stress, necessitating her June 2011 leave of absence. *See, e.g., Maniates v. Lake Cnty., Or.*, No. CV 08-03038-PA, 2008 WL 4500373, at *2 (D. Or. Oct. 7, 2008) (granting request for production that "properly limited the request to those records concerning medical treatment received by plaintiff for any injuries plaintiff is contending were caused by the conduct of the defendant set forth in plaintiffs complaint."). To the extent that Robinson may seek to claim damages for any subsequent stress-related leave from work, the same analysis applies.

Additionally, I agree with defendant that Robinson's complaint alleges emotional distress beyond "garden variety" status, thereby waiving both the privacy protection and the

OPINION AND ORDER- Page 6

psychotherapist-patient privilege, should it apply. In *Arjangrad*, this court discussed the notion of "garden variety" emotional distress as follows:

> Courts in this circuit define garden variety emotional distress as "ordinary or commonplace emotional distress," that which is "simple or usual," or "humiliation, embarrassment, anger, and other similar emotions." *Fitzgerald*, 216 F.R.D. at 637. Although some courts limit garden variety emotional distress to suffering experienced at the time of the alleged misconduct, others acknowledge garden variety emotional distress can encompass longer-lasting effects. *Compare Kim v. Interdent Inc.*, 2010 WL 1996607, at *1 (N.D.Cal. 2010) (contrasting garden variety emotional distress at the time of complained-of conduct with "ongoing emotional distress damages") *with Sims v. Lakeside School*, 2007 WL 5417731, at *1 (W.D. Wash. Mar. 15, 2007) (garden variety emotional distress includes "depression, anger, irritability, sleep loss, discouragement, withdrawal, relived experience and low self esteem"). These disparate results can be explained by the well-accepted principle that whether a plaintiff's emotional response is "garden variety" depends on the harm to which that plaintiff was allegedly subjected. *See Kunstler v. City of New York*, 2006 WL 2516625, 9 (S.D.N.Y. 2006) (garden variety emotional distress is "the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized"); *Flowers v. Owens*, 274 F.R.D. 218, 225 (N.D. Ill. 2011) (collecting cases with similar holdings).

*Arjangrad*, at 16-17. As the final sentence observes, determining whether Robinson's allegations of emotional distress are "garden variety" requires the court to consider them in comparison to defendant's allegedly discriminatory conduct.

I note that since this case is in an early stage and Robinson has yet to be deposed, the full extent of Robinson's alleged emotional distress damages are not entirely clear. However, even the allegations in Robinson's complaint exceed "garden variety." Robinson alleges defendant's conduct caused emotional distress sufficient to prevent her from attending work for at least six weeks. Neither party cites any cases, and I find none, involving the present factual scenario – an employment discrimination plaintiff whose alleged emotional distress is caused by her current employer. Yet, in situations where a plaintiff no longer works for a discriminatory employer,

garden variety damages regularly encompass feelings of anxiety, humiliation, and depression. *See, e.g., E.E.O.C. v. Serramonte*, 237 F.R.D. 220, 224 (N.D. Cal. 2006) (plaintiff who alleged suffering distress and humiliation, feeling attacked and devalued as a woman, nervousness, depression, and crying after experiencing sexual harassment in the workplace alleges only garden variety emotional distress). Using that principle as a guideline, I conclude that, as a general matter, the inability to remain in a discriminatory workplace exceeds what courts have considered to be garden variety emotional distress.[4]

Moreover, nothing about this case suggests defendant's alleged discrimination was so unusually damaging as to compel a different conclusion. Defendant's alleged mistreatment of Robinson included verbal criticism, unequal enforcement of company rules, reprimands, and the like. This type of discrimination is certainly more harmful than a technical statutory violation, but likely less harmful than explicit racial slurs or physical harassment. To the extent that a "healthy, well-adjusted person" experienced workplace discrimination in the matter described in Robinson's complaint, a six-week stress-induced leave of absence from work is beyond the normal emotional response. *See Kunstler v. City of New York*, 2006 WL 2516625, 9 (S.D.N.Y. 2006) (garden variety emotional distress is "the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized").

Regarding the psychotherapist-patient privilege analysis, it is unclear at this stage whether

---

[4] Certainly the prospect of returning to a discriminatory workplace would induce a higher level of emotional distress than merely dealing with the after-effects of workplace discrimination once the employment relationship has terminated. However, even those two scenarios do not create identical emotional harm, they are roughly comparable.

Robinson intends to rely on testimony from her medical providers to establish her emotional distress damages, one of the factors this and other courts consider to be significant to a finding of waiver. When asked, Robinson declined to stipulate at oral argument that she will not offer testimony from her medical providers concerning the emotional effects of defendant's alleged discrimination. In addition, her complaint implies that she will at least introduce evidence that her medical providers authorized her to take the June 2011 leave of absence. These factors favor a finding that Robinson waived any existing psychotherapist-patient privilege.

Ultimately, given the uneasy necessity of determining what is an ordinary emotional response to an allegedly traumatic employment situation, I agree with defendant that emotional distress serious enough to cause a six-week leaves of absence cannot be considered "garden-variety." Thus, under either the constitutional right to privacy or the psychotherapist-patient privilege, Robinson has waived her protection to medical records pertaining to her mental health treatment or medical treatment of physical conditions linked to her mental health. However, I find that Robinson's waiver is limited to medical records from the past five years, starting the year prior to the beginning of her employment with defendant. To obtain older records, defendant will have to make a specific showing that the emotional distress Robinson attributes to defendant has its genesis in an earlier medical condition. Moreover, Robinson has not waived the privacy protection of any medical records unrelated to mental health, because they are irrelevant to Robinson's emotional distress allegations. *See Fitzgerald*, 216 F.R.D. at 634 ("pure" medical records are not relevant and therefore not discoverable because plaintiff makes no claim for bodily injury other than that directly linked to emotional distress).

## CONCLUSION

For the reasons stated above, plaintiff's motion for protective order (#9) is granted in part and denied in part. Defendant is barred from subpoenaing plaintiff's medical records, except those from the past five years pertaining to plaintiff's mental health treatment or medical treatment of physical conditions linked to plaintiff's mental health.

IT IS SO ORDERED.

Dated this 22nd day of May, 2012.

_____
Honorable Paul Papak
United States Magistrate Judge